Jennifer Kramer, Cal. Bar No. 203385
Email: jennifer@employmentattorneyla.com
HENNIG KRAMER RUIZ & SINGH, LLP
3600 Wilshire Blvd., Suite 3600
Los Angeles, CA 90010
Telephone: (213) 310-8301

*an application for admission to this Court Pro Hac Vice*
*will be forthcoming for –*
**STRIANESE HUCKERT LLP**
Christopher R. Strianese, NC Bar No. 46918
3501 Monroe Road
Charlotte, NC 28205
*chris@strilaw.com*
Tel. 704-966-2101

Attorneys for Plaintiff
*Jenny Klamforth*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY KLAMFOTH,<br><br>Plaintiff,<br><br>- against -<br><br>PRIVATE NATIONAL MORTGAGE ACCEPTANCE COMPANY LLC d/b/a PENNYMAC,<br><br>Defendant. | Case No.:<br><br>**FOR DAMAGES AND EQUITABLE RELIEF:**<br><br>1. **FMLA INTERFERENCE – 29 U.S.C.A. §2601 et. seq.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Jenny Klamfoth, by and through her undersigned counsel, brings this action for violations of the Family Medical Leave Act, 29 U.S.C.A. §2601 *et.*

*seq*. ("FMLA"), against Defendant Private National Mortgage Acceptance Company LLC d/b/a Pennymac ("Defendant" or the "Company").

## INTRODUCTION

1.     This action seeks to redress Defendant's unlawful firing of Plaintiff, a former employee of Defendant, who is terminally ill with Metastatic Breast Cancer.  Defendant terminated Plaintiff because she took FMLA protected leave to undergo cancer treatment.  Plaintiff seeks to recover from Defendant all damages available to her under the law for Defendant's wanton and unlawful conduct.

## THE PARTIES

2.     Plaintiff, Jenny Klamfoth, is an adult individual who resides in Union County, North Carolina.

3.     Defendant, is upon information and belief, a California Corporation with its principal place of business in Westlake Village, California.  Plaintiff worked remotely for Defendant from her home in North Carolina.  At all times relevant to this action, Defendant employed over 50 people at the location that Plaintiff reported into while employed by the Company.

## JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction over this matter under 28 U.S.C. §1331 because the claims in this action are brought under the FMLA, 29 U.S.C.A. §2601, *et. seq*.

5.     This Court has personal jurisdiction over the Defendant because the Defendant's principal place of business is in this District, and Defendant conducts business in this District.

6.     Venue is proper in this District because Defendant's principal place of business is in this District, the unlawful conduct engaged in by Defendant occurred, in substantial part, in this District, and because the documents in Defendant's possession that are relevant to this matter are, upon information and belief, located within this District.  Upon information and belief, substantially all of the witnesses with relevant information about this case (except for Plaintiff) are located at Defendant's corporate headquarters in Westlake Village, California. Upon information and belief, all or substantially all of the documents in Defendant's possession that are relevant to this dispute are located at Defendant's corporate headquarters in Westlake Village, California.   Upon information and belief, some or all of the employment decisions at issue in this action were made at the Defendant's corporate headquarters in Westlake Village, California.

### FACTUAL ALLEGATIONS

7.     Defendant is a national home loan lender and mortgage servicer.  At all times relevant to this Complaint, Defendant employed more than 50 employees and was and is therefore required to comply with the FMLA.

8.     Plaintiff began her employment with Defendant in or about August

2015.  At the time of her termination, in March of 2022, Plaintiff's title was Account Manager.

9.     Throughout her employment with Defendant, Plaintiff's performance met Defendant's expectations.

10.    Indeed, Plaintiff was a top-performing Account Manager on her team with either the highest or one of the highest effective funding margins annually.

11.    Throughout her employment, Plaintiff never received a negative performance review, nor was she ever disciplined by Defendant.

12.    To the contrary, Plaintiff always received positive performance reviews and feedback, both internally and from the third-party clients she serviced on Defendant's behalf.

13.    Plaintiff suffers from Stage IV terminal Metastatic Breast Cancer. The Metastatic Breast Cancer that Plaintiff suffers from qualifies as a disability under the Americans with Disabilities Act because it limits one or more of her major life activities.

14.    Due to this illness, Plaintiff has undergone many rounds of radiation treatment and has had to take chemotherapy pills.

15.    One side-effect of the treatment Plaintiff has undergone is that it has, at times, led to a significant decrease in her white blood cell count, making her particularly vulnerable to illnesses.

COMPLAINT

16.     In or about early 2020, Plaintiff's physician advised her to avoid traveling from January 2020 through March 2020 while the flu was prevalent.

17.     In or about January 2020, Plaintiff requested an accommodation from Defendant that would excuse her from traveling during flu season.

18.     Defendant granted the accommodation request.  However, Plaintiff's direct supervisor, Scott Maddox, was clearly unhappy that Plaintiff had requested and received this accommodation.

19.     Mr. Maddox told Plaintiff that because she needed this accommodation, she would have to forgo her annual bonus.  Mr. Maddox then made Plaintiff sign an agreement giving up her annual bonus in return for Defendant granting Plaintiff the accommodation request.

20.     Mr. Maddox told Plaintiff that they could "revisit" the issue in April 2020 once Plaintiff was released to travel again.

21.     Mr. Maddox had a poor attitude toward her after she requested and was granted the accommodation and he started treating her differently, being rude to her, belittling her, and being condescending to her.

22.      In March 2020, the COVID-19 pandemic hit the United States.

23.     As a result, none of Defendant's Account Managers traveled regularly for much of 2020.

24.     In November of 2020, Ms. Klamfoth called Mr. Maddox and asked

**COMPLAINT**

whether she could receive her 2020 annual bonus since his rationale for her not receiving the bonus was her inability to travel for a few months in 2020 and, as it turned out, none of the other Account Managers who received bonuses could travel either. Plaintiff reminded Mr. Maddox that they had previously agreed to re-visit the bonus issue in April 2020 but had never done so.

25.    Mr. Maddox callously laughed at Plaintiff and denied her request.

26.    Approximately one week later, Plaintiff telephoned Mr. Maddox again about the bonus issue. Plaintiff told Mr. Maddox that she felt strongly that she should not have been denied the bonus for needing a travel accommodation for her disability since none of the other Account Managers traveled either. She noted that 2020 had been one of the most profitable years in the history of correspondent lending, volumes and margins were at an all time high and, even with her accommodation, her performance had been excellent. Ms. Klamfoth asked Mr. Maddox whether she could discuss the issue with Mr. Maddox's boss. Mr. Maddox again laughed at Ms. Klamfoth and dismissively told her she could talk about the issue with "whoever she liked."

27.    In August 2021, Ms. Klamfoth's cancer got worse with new lesions in her ribs, spine, shoulders, sternum, and skull.

28.    In late 2021, Ms. Klamfoth went on a Company-approved FMLA leave and a short-term disability leave for additional radiation treatment and to

**COMPLAINT**

participate in a clinical trial at UNC Chapel Hill.   Plaintiff was qualified for and entitled to this FMLA leave.

29.     While Plaintiff was on Company-approved FMLA leave, Mr. Maddox texted Plaintiff and asked if she was ever coming back to work.

30.     Plaintiff responded that she could not wait to return to work.

31.     Despite this, while Ms. Klamfoth was out on Company-approved FMLA leave, Defendant hired Plaintiff's replacement, Adrienne Schaberg.  Upon information and belief, Ms. Schaberg is a younger, healthier employee, who is not a member of Plaintiff's protected class and has not taken FMLA leave while employed by the Company.

32.     Upon information and belief, Ms. Schaberg had either no, or very limited, sales experience in the industry.

33.     Upon information and belief, Ms. Schaberg was not given a book of business at the time of her hire, nor did she come to the Company with a book of business.

34.     Plaintiff excitedly returned to work from her Company-approved FMLA leave on December 20, 2021.

35.     Plaintiff was excited to return to work because work was the outlet that kept her from ruminating on her terminal illness. Plaintiff's job gave her purpose and an outlet to interact with colleagues and feel normal.

36.     In addition, Plaintiff was the primary wage-earner in her family and her family relied on her income and perquisites.

37.     Following Plaintiff's return to work, Defendant had Ms. Schaberg join Plaintiff on several business-related calls.

38.     Upon information and belief, Defendant did this so that Ms. Schaberg could become familiar with Ms. Klamfoth's duties, responsibilities, and clients.

39.     On March 7, 2022, approximately 10 weeks after she returned from FMLA leave, Defendant terminated Plaintiff, allegedly as part of a "reduction in force."

40.     During Plaintiff's termination, Defendant told Plaintiff that her job was "being eliminated."

41.     This rationale was nothing more than a pretext for unlawful FMLA interference.

42.     Plaintiff's job was not "eliminated;" Plaintiff was replaced by Ms. Schaberg, who is not a member of her protected class and did not take FMLA leave.

43.     After Plaintiff's termination, Ms. Schaberg was assigned much, if not all, of the book of business that Plaintiff serviced for the Company and took over much, if not all, of Plaintiff's duties and responsibilities.

44.     In fact, shortly after her termination, clients who Plaintiff serviced on

behalf of Defendant contacted Plaintiff asking why Ms. Schaberg had replaced Plaintiff as their new Account Manager.

45.     Upon information and belief, clients who Plaintiff serviced on behalf of Defendant were unhappy that Ms. Schaberg had replaced Plaintiff as their Account Manager because Plaintiff had been such a high-performing employee and had such a good relationship with her clients.

46.     At the time of her termination, Plaintiff was a longer-tenured employee than Ms. Schaberg.

47.     At the time of her termination, Plaintiff had more relevant sales experience than Ms. Schaberg.

48.     At the time of her termination, Plaintiff had stronger relationships with the clients she serviced on behalf of Defendant than did Ms. Schaberg.

49.     At the time of her termination, Plaintiff had never received a negative performance review, any discipline from the Company, or any performance improvement plan.

50.     At the time of her termination, Plaintiff was meeting all of the Company's performance expectations.

51.     At the time of her termination, Plaintiff was a top performing Account Manager on her team with the Company.

52.     In some or all of the years preceding her termination, Plaintiff had one

**COMPLAINT**

of the highest effective funding margins on an annual basis.

53.     Ms. Schaberg replaced Plaintiff.

54.     After Plaintiff's termination, Ms. Schaberg serviced and/or continues to service some or all of Plaintiff's former client accounts.

55.     Defendant terminated Plaintiff, and kept Ms. Schaberg, because Plaintiff took FMLA leave and suffers from a disability.

56.     Plaintiff's use of FMLA leave, and the absences resulting therefrom, was a substantial, motivating and/or negative factor used in Defendant's decision to terminate Plaintiff.

57.     Defendant's decision to terminate Plaintiff constituted unlawful FMLA interference.

58.     Defendant's conduct was the proximate cause of Plaintiff's damages.

59.     Plaintiff has attempted to mitigate her damages.

60.     Defendant's actions were wanton and unjustified.

61.     Defendant is liable to Plaintiff in an amount to be determined at trial for any and all damages and remedies provided for or permitted under law, all of which are expressly incorporated herein and sought in this action.

**COMPLAINT**

## FIRST CLAIM FOR RELIEF

### (FMLA INTERFERENCE – 29 U.S.C.A. §2601 et. seq.)

62.     Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs.

63.     Defendant's termination of Plaintiff constituted unlawful FMLA interference.

64.     Plaintiff's use of her entitled FMLA leave was the cause of, a substantial and motivating cause of, and/or a negative factor used in, Defendant's decision to terminate Plaintiff.

65.     Defendant's proffered reasons for terminating Plaintiff are pretextual.

66.     Plaintiff is entitled to all damages and remedies provided for or permitted under the FMLA which are expressly incorporated herein and sought hereunder, including without limitation, compensatory and liquidated damages.

67.     Plaintiff is entitled to attorneys' fees and costs under the FMLA.

68.     Plaintiff is entitled to a trial by jury on all issues so-triable under the law.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF

### (Reserved – Americans with Disabilities Act)

70.     Plaintiff has or will shortly file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability

discrimination in violation of the Americans with Disabilities Act ("ADA"). Plaintiff anticipates seeking leave to amend this Complaint to bring claims under the ADA upon the EEOC's issuance of a right-to-sue letter.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays the Court for the following relief:

a) an Order declaring that Defendant has violated the FMLA and that Plaintiff is the prevailing party in this action;

b) awarding Plaintiff all damages and remedies provided for or permitted under applicable law, including without limitation, reinstatement and/or compensatory and liquidated damages;

c) For consequential damages according to proof;

d) For a money judgment representing compensatory damages including lost past and future wages, earnings, retirement benefits and other employee benefits, and all other sums of money, together with interest on those amounts, according to proof;

e) For a money judgment for mental pain and anguish and emotional distress, according to proof;

f) For an order requiring Defendants to cease and desist from violating the FMLA;

**COMPLAINT**

g) For an order requiring Defendants to cease and desist from retaliating against its employees who take leaves covered by the FMLA;

h) For an order requiring Defendants to conduct a training program for all of its California managers, supervisors and human resources personnel about its FMLA-related policies;

i) For an order requiring Defendants to develop policies that are compliant with the FMLA and related regulations;

j) For all available injunctive, equitable, and other relief and/or remedies available under the law;

k) For an award of punitive damages, according to proof;

l) For pre-judgment interest as allowed by statute;

m) For reasonable attorney's fees, expenses and costs as provided by the FMLA;

n) For costs of suit incurred; and

o) For such other and further relief the court may deem just and proper

**Respectfully Submitted,**

**Dated: June 7, 2022**          **HENNIG KRAMER RUIZ & SINGH, LLP**


By:/s/ Jennifer Kramer, Esq.

Jennifer Kramer, Esq.
CA Bar No. 203385

**COMPLAINT**

3600 Wilshire Blvd.
Suite 1908
Los Angeles, CA 90010
*jennifer@employmentattorneyla.com*
Tel. 213-310-8301
*Counsel for Plaintiff*

- *an application for admission to this Court Pro Hac Vice will be forthcoming for –*

**STRIANESE HUCKERT LLP**


By:/s/ Christopher R. Strianese, Esq.
Christopher R. Strianese, Esq.
NC Bar No. 46918

3501 Monroe Road
Charlotte, NC 28205
*chris@strilaw.com*
Tel. 704-966-2101
*Counsel for Plaintiff*


## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

**Dated: June 7, 2022**          **HENNIG KRAMER RUIZ & SINGH, LLP**


By:/s/ Jennifer Kramer, Esq.
Jennifer Kramer
*Counsel for Plaintiff*

**COMPLAINT**